UNITED STATES COURT

DISTRICT OF NEW JERSEY

**RECEIVED**

AUG 3 1 2023

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

MARCIA RAFTER

Plaintiff,

COMPLAINT

JURY TRIAL

v.

AvalonBay Communities, Inc.

Benjamin Schall

Lewis Heredia

Natalie Rana

Tatiana Siviak

Melissa Clancy

John Does

Jane Does

Defendants.

I. Parties in this complaint

A.

Plaintiff's address is 201 Albert Way, Princeton, New Jersey 08540.

B.

Defendant AvalonBay Communities, Inc. address is 4040 Wilson Blvd., Ste. 1000, Arlington, Va 22203

Defendant Schall's address is AvalonBay Communities, Inc., 4040 Wilson Blvd.,Ste. 1000,  Arlington, Va 22203

Defendant Heredia's  address is Avalon Princeton, 100 Albert Way,  Princeton, NJ 08540

Defendant Rana's address is Avalon Princeton, 100 Albert Way, Princeton, New Jersey 08540.

Defendant Clancy's address is Avalon Princeton, 100 Albert Way, Princeton, New Jersey 08540.

Defendant Siviak's address is Avalon Princeton, 100 Albert Way, Princeton, New Jersey 08540.

John Does' and Jane Does' addresses are unknown

II.  Basis for Jurisdiction

Diversity of Citizenship - Under 28 U.S.C. § 1332.

Plaintiff's state of citizenship is New Jersey.

Defendants state of citizenship is Virginia.

III.  Statement of Claim

Plaintiff alleges as follows:

1.  **As of August 2023 AvalonBay Communities Inc.is worth over $25.74 Billion Dollars**

**AvalonBay Communities, Inc. is the 3rd largest owner of apartments in the United States'**

2

**Avalon Bay Communities, Inc. is the 16th largest Publicly Traded REIT--Real Estate Investment Trust.**

**AvalonBay Communities owns over 88,000 apartment units in New Jersey, New York, Connecticut, Flordia, California, Virginia, Washington, Colorado**

*As of June 30, 2023, the Company owned or held a direct or indirect ownership interest in 294 apartment communities containing 88,659 apartment homes in 12 states.*

AvalonBay Communities Inc.'s mission is making Money. to AvalonBay Communities, Inc. Plaintiff is Expendable.

Plaintiff rents an apartment from AvalonBay Communities, Inc.. The apartment is located at

201 Albert Way in Princeton, New Jersey--the building is named Avalon Princeton.

AvalonBay Communities, Inc. owns and manages Avalon Princeton.

2.   Plaintiff's first lease commenced on 2/18/2020. The lease was renewed on 2/18/2001, and

renewed again on 2/18/22 and renewed again on 2/18/2023--each lease is for a one year term

3.  Defendants failed to properly remove the mold and make the apartment safe for occupancy.

Defendants failed to properly remove the mold and make the apartment safe for occupancy.

Defendants had a duty of care and liability for such duty of care and Defendants breached that

duty of care.

In September 2021 Plaintiff found black mold in the hall closet located in the kitchen—the entry door opens into the kitchen and closet is on the left hand side.

The closet is approximately 9 feet tall, 6 feet wide, and 4 feet deep.

The black mold was on the walls, the ceiling, the base boards, and mold had climbed the interior door frame like ivy.

More mold is now in the apartment and Plaintiff has notified Defendants and Plaintiff is awaiting their action .

Defendant Heredia-- a maintenance employee for Avalon Princeton came and examined the closet.  Defendant Heredia then texted his Supervisor while standing in the closet .

Defendant Heredia told Plaintiff the entire closet had to be Ripped Out and Replaced.  Defendant Heredia said that was the Normal Procedure with this Much Mold.

Defendant Heredia also misrepresented how and what the mold removal would be.

Defendant Heredia assured Plaintiff that this mold removal was done all the time at Avalon Princeton ,and it was merely Routine to have the closet Ripped out and Replaced.

Defendant Heredia assured Plaintiff that people doing the mold removal were professional, experienced in mold removal and would create no problems.

Defendant Heredia assured Plaintiff that Heavy Gauge Plastic would protect the rest of the apartment and that Plaintiff and her possessions would be protected and not harmed in any way.

This was a complete lie.

Over a week later  Defendant Heredia arrived with 2 Hispanic men –One man spoke no English and he had his hair brushed down over his face. He wore a mask covering most of his face and spent most of the time facing the wall and avoiding security cameras.

Plaintiff told Defendant Heredia and the 2 men Plaintiff needed to see photo IDs before Plaintiff would allow entry.

Defendant Heredia objected--identifying himself and head of maintenance for Avalon.--Plaintiff later learned this was a lie. Defendant Heredia is merely a maintenance employee that AvalonBay Communities, Inc.
brought up under the H1N1 Visa Program from Mexico. Defendant Heredia has no experience in anything.

Defendant Heredia said the men were his friends and that should be good enough for me.

Defendant Heredia took the men outside.

Defendant Heredia then returned announcing to me that he had spoken with his Supervisor and t

hat his Supervisor said Plaintiff could either let the men in or - I could "Shove It. And Live With

It."

Reluctantly Plaintiff let the 2 men in.

The men draped a very light thin plastic--the consistency of Plastic used by the Dry cleaners for

a dress.  Plaintiff had one side window open six inches in the living room--about 20 feet from the

plastic. The men told Defendant Heredia in Spanish that The Air from the Window was moving

the plastic. and window needed to be closed.  There was no wind of any kind--this was just cheap

plastic. Plaintiff accommodated them and closed the window.

The men wore no Hasmat Suits which Plaintiff has now learned are worn during mold

removal.  They wore just tee shirts and jeans.  They put a dirty cloth on part of the floor. They

took measurements of the closet and went to Home Depot to get materials to rebuild the closet—

Plaintiff asked them to get a New Shelf--since the present one had mold growing on it.

They refused.

They returned later and they knocked down the closet.

The 2 men used Plaintiff's kitchen sink dozens of times--rinsing off tools and rags and rinsing mold into the kitchen sink and mold onto the counters

The Air in the apartment is horrendous and Plaintiff is sick from all of this.

What has now developed is mold growing behind the bottom kitchen cabinets.

Plaintiff have had immense problems trying to live in the apartment--Plaintiff have since learned that the mold removal should have been followed by mold remediation and cleaning the air and cleaning the heating and air ducts..

The mold spores are in the heating and air conditioning system.

This is all been caused by Defendants' conduct, failures, and negligence.

Defendants also refused to enter the closet mold and mold removal into the maintenance records f
or Plaintiff's apartment.

When Plaintiff asked property manager--Defendant Rana-- to do so Defendant Rana refused.

Plaintiff then withheld the rent telling Defendant Rana  that Plaintiff wanted the mold removal

entered into Service Records--there are a series of emails documenting this.

Defendant Rana served Plaintiff with an eviction notice.

Defendant Rana then decided to make the entries into the Service Records and Plaintiff paid the

rent subsequently.

Plaintiff has zero confidence in Ms. Rana's abilities or intentions.

Plaintiff  has zero confidence in Ms. Rana's abilities or intentions

Her manager is a Russian woman whose previous job was working at the Better Business

Bureau--how does this qualify to run this property.

Plaintiff relied and trusted the information Defendant Heredia stated to Plaintiff.  Plaintiff trusted

Defendant Heredia that the mold removal was going

be done expertly, professionally and safely.

Plaintiff trusted Defendant Heredia's statements that ripping out the entire closet and removing

the mold was just Routine and had been done many times before at avp. In fact, Mold had been

removed so many times and Closets Ripped out so many times that there were special mold and

closet people to do the repairs.

IV.  Injuries

4. Defendants are responsible for providing reasonable maintenance at the premises .

5. Defendant AvalonBay Communities, Inc. is the owner and landlord of the premises, owing

duties of care as landlord and owner, including maintaining the premises in a reasonably safe

manner, in a condition which was reasonably safe for occupant/tenant.

6. Rather than hire competent personnel or companies to repair the mold damage and to

properly remediate the effects of the mold, Defendants did not repair. Defendants did not

remediate the effects of the mold, including the abnormal growth of harmful microbes which

began to proliferate in that defective environment.

7. Defendants never warned at any time that the microbes and their excreted chemistries were

potentially harmful to Plaintiff.

8. Over the ensuing months and years , Plaintiff has been constantly exposed to the microbes

and their excreted chemicals but did not know that she was being exposed to anything harmful.

Mold spores are invisible to the human eye.

9. Plaintiff physically reacted with illness symptoms after inhaling the air in the unit.

Unfortunately, she was harmfully contacted by the organisms and their chemistries which were

in a quantity to cause her harm.

Mold and its Environmental Consequences

10. Mold is a fungus which reproduces by creating spores or microscopic cells that generate in

large numbers often in chains that easily disperse into the air. If adequate moisture is present

when a mold spore lands on a suitable food source, such as drywall, it begins to grow.

11. Within days, a single spore can produce a mater mold colony containing millions of spores.

12. When certain species of mold grow and mature nutrients, they produce chemicals called

mycotoxins.

13. Mycotoxins attack the nervous, respiratory and muscular systems and can enter the body

either via ingestion, inhalation or direct skin contact and can lodge in the digestive tract, lungs or

brain. Inhalation is known to be an even more potent route of exposure than ingestion.

14. Symptoms of mycotoxin exposure can include upper respiratory infections, coughs, sore

throats, headaches, depression, memory loss, nausea, fatigue, hemorrhaging, convulsions, skin

irritation, cancer and organ

and tissue damage including liver, kidney and neurological disease.

15. Plaintiff has endured adverse health consequences consistent with exposure to indoor toxic

and allergenic mold.

16. Plaintiff continues to suffer from health consequences.

17. As a direct and proximate result of the Defendants' negligence, the Unit was defective,

damaged, and not reasonably fit for human habitation.

18. As a proximate result of the Defendants' negligence, Plaintiff has been damaged in other

ways which include, but are not limited to, physical injury and/to destruction, in whole or in

material part, to personal property maintained within the unit, the loss of use of said property,

and personal injury to the occupant thereof.

19. Upon information and belief, the Plaintiff will incur future medical expenses as a result of the

Defendants' conduct, the exact amount of which is presently unknown.

20. The defects and deficiencies causing the mold exposure are latent defects.

The Defendants, owed to Plaintiff the duty to use reasonable due care, and to have performed in

a competent and workmanlike manner all of the work and activity which Defendants agreed to,

was required to, and undertook to perform in connection with the management, maintenance,

repair and upkeep of the rental apartment community and, in so doing, owed Plaintiff a duty

imposed by law to avoid harm to the Plaintiff.

Defendants breached its duties of due care to the Plaintiff by failing to warn Plaintiff of the

defects and conditions of which it was aware; by having work performed which was inadequate

and inappropriate for the purposes for which it was intended; by failing to perform, and

refraining from performing, negligent remedial and corrective work; causing and contributing to

growth of toxigenic and allergenic fungi and their chemistries in the unit creating an adverse

health risk and personal injuries to the occupant thereof; and that such breaches contributed to

and/or caused the defects and damages described herein.

COUNT I

Plaintiff seeks to recover damages for Negligence by Defendants..

Count II

Plaintiff seeks to recover damages from Defendants for Breach of contract

Count III

Plaintiff seeks to recover damages for Breach of Fiduciary Duty

Count !V

Plaintiff seeks to recover damages for Breach of Duty of Care.

Count V

Plaintiff seeks to recover damages for Fraud Defendants perpetrated on Plaintiff.

Defendants made **a material misrepresentation of a fact, knowledge of its falsity, an intent**

**to induce reliance, justifiable reliance by the plaintiff, and caused damages**

to Plaintiff.

Count VI

Plaintiff seeks to recover damages for Defendants' Breach of Trust.

Count VII

Plaintiff seeks to recover damages for Misrepresentations by Defendants to Plaintiff

Plaintiff has been injured by Defendants' conduct and seeks to recover damages for for this conduct.

Count VIII

Breach of Warranty of Habitability

Plaintiff has been injured by Plaintiff's conduct and seeks to recover damages for this conduct.

Count IX

Defendants have Inflected of Emotional Distress upon Plaintiff.

Plaintiff has been injured by Plaintiff's conduct and seeks to recover damages for this conduct.

Count X

Defendants have Harassed Plaintiff.

Plaintiff has been injured by Plaintiff's conduct and seeks to recover damages for this conduct.

Count XI

Deprivation of Plaintiff's Legal Right to Quiet Enjoyment of her Apartment

Plaintiff has been injured by Plaintiff's conduct and seeks to recover damages for this conduct.

Count XII

Defendants engaged in gross negligence . ~~px~~ Plaintiff suffered harm from Defendants' gross negligence ~~px~~ Plaintiff sues to recover damages.

Count XIII

~~da~~ Defendants engaged in Reckless Endangerment. ~~px~~ Plaintiff has suffered harm. ~~px~~ Plaintiff sues to recover damages.

V.. Relief

As discovery yields evidence, Plaintiff reserves the right to make this lawsuit a class action suit

and to file a RICO claim against Defendants.

Wherefore, plaintiff requests judgment against defendant for $250 Million Dollars in damages,

together with attorney's fees, legal fees, contingency fees, cost of plaintiff's time in litigating

lawsuit, loss of income, cost of replacement of Plaintiff's belongings, costs for accommodations,

all personal costs, costs of suit, a Comparable Apartment, Punitive Damages of $250 Million

Dollars and any other relief as the court may deem proper.

I declare under the penalty of perjury that the foregoing is correct.

Signed this day of ~31st~ ~of~ ~August~ ~2023~

*Marcia Rafter*

signature

Marcia Rafter

avp1@usa.com

201 Albert Way

Princeton, NJ 08540

203 644-2919

*Marcia Rafter*