**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MARCIA RAFTER**,<br><br>Plaintiff,<br><br>v.<br><br>**AVALONBAY COMMUNITIES, INC.,** *et al.*,<br><br>Defendants. | Civil Action No. 23-13674 (ZNQ) (JTQ)<br><br>**OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon two motions: (1) a Motion to Dismiss filed by Defendant AvalonBay Communities, Inc. ("AvalonBay") and Benjamin Schall ("Schall) (collectively "Defendants") (the "Motion to Dismiss," ECF No. 42), and (2) a Motion for Default Judgment filed by *pro se* Plaintiff Marcia Rafter ("Plaintiff" or "Rafter") (the "Motion for Default Judgment," ECF No. 44).[1]  In support of their Motion to Dismiss, Defendants filed a Moving Brief ("Moving Br.," ECF No. 42-1), and a certification of counsel (ECF No. 42-2.)  Plaintiff filed an

---

[1] In support of Plaintiff's Motion for Default Judgment, Plaintiff submitted a Moving Brief and Affirmation.  (ECF No. 44.)  Defendants filed an opposition brief.  (ECF No. 48.)  The Court has carefully considered the parties' submissions and will deny Plaintiff's Motion for Default Judgment given that the Clerk of Court never entered default under Federal Rule of Civil Procedure 55(a).  (*See* Clerk's Quality Control Message between ECF Nos. 45 and 46); *see also Limehouse v. Delaware*, 144 F. App'x. 921, 923 (3d Cir. 2005) (affirming denial of default judgment where the plaintiff failed to first obtain entry of default).  Even if Defendants' Motion to Dismiss were untimely given that the Fourth Amended Complaint was filed on July 8, 2024, the Court would nevertheless deny default judgment because the Motion to Dismiss has already been filed—on the same day as the Motion for Default Judgment—so there is no prejudice to Plaintiff, *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000), and the Third Circuit has instructed district courts to reach the merits of cases over granting default judgment whenever possible, s*ee Zawadski de Bueno v. Bueno Castro*, *822* F.2d 416, 420 (3d Cir. 1987).  Accordingly, Plaintiff's Motion for Default Judgment (ECF No. 44) will be **DENIED.**

Opposition Brief ("Opp'n Br. I," ECF No. 56), an Amended Response in Opposition ("Opp'n Br. II," ECF No. 57), and a Second Amended Response in Opposition ("Opp'n Br. III," ECF No. 58).[2] Defendants submitted a reply.  ("Reply Br.," ECF No. 59.)  After the Reply, Plaintiff submitted a letter to the Court asking for leave to amend her Fourth Amended Complaint based on allegations that defense counsel committed fraud and perjury.  (ECF No. 60.)  Defendants responded seeking the Court to strike Plaintiff's "meritless allegations" from the record.  (ECF No. 61.)  Plaintiff responded.  (ECF No. 62.)

The Court has carefully considered the parties' submissions and decides the Motion to Dismiss without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[3]  For the reasons set forth below, the Court will **GRANT** the Motion.

## I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>[4]

As best the Court can intuit, Plaintiff rents an apartment from AvalonBay in Princeton, New Jersey in a building named the "Avalon Princeton."  (Fourth Am. Compl. at 3.)[5]  Plaintiff first leased the apartment starting on February 18, 2020 and renewed each year for a one-year term. (*Id.*)  In July and September 2021, Plaintiff alleges that Defendants failed to "professionally and properly remove mold and repair faulty construction and make the apartment safe for occupancy." (*Id.* at 3–4.)  Due to Defendants' failures, Plaintiff alleges that she has been sick since 2021 from the mold.  (*Id.* at 4.)  Plaintiff claims that she notified Defendants of the mold and "incompetence and faulty construction" yet Defendants took no action other than "a campaign of retaliation and

---

[2] Given Plaintiff's *pro se* status and the lack of prejudice to Defendants, the Court will consider Plaintiff's Amended and Second Amended Opposition papers.  In the future, however, Plaintiff must file a single opposition to any motion.
[3] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[4] For the purpose of considering this Motion, the Court accepts all factual allegations in the Complaint as true.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).
[5] The Court cites to the page numbers of the Fourth Amended Complaint herein given that there are no numbered paragraphs in the Fourth Amended Complaint.

reprisals against Plaintiff." (*Id.*) Thus, Plaintiff claims that Defendants violated the New Jersey Reprisal Laws, N.J. Stat. Ann. § 2A:42-10.10, *et seq.* (*Id.*)

As alleged, the mold arose from a leak from Plaintiff's air-conditioning unit where water was "pouring from the ceiling." (*Id.* at 5.) Lewis Heredia ("Heredia"), a maintenance employee for AvalonBay, attended to the issue. (*Id.*) However, in September 2021, after Heredia first came, Plaintiff discovered black mold in her apartment. (*Id.*) Heredia attended to the mold as well, explaining to Plaintiff that the "closet had to be ripped out." (*Id.* at 13.) When Heredia and two other men came to the apartment to address the mold issue, Plaintiff reluctantly let them in, but according to Plaintiff, the maintenance team failed to properly address the situation. (*Id.* at 16.) Plaintiff continued to notify Defendants but, as of the date of the Fourth Amended Complaint, Defendants have allegedly failed to remove the mold or fix the faulty construction. (*Id.* at 6.) Plaintiff also claims that Heredia is "brought up under the H1N1 Visa Program from Mexico" and "has no experience in anything," adding to Defendants' negligence. (*Id.* at 14–15.) Thus, as alleged, "everything could have been avoided if Heredia had done his job properly and not negligently." (*Id.* at 19.)

In October 2023, Plaintiff was informed that the mold removal company "BELFOR" was going to remove the mold from her apartment. (*Id.* at 28.) As a result, Plaintiff would have to vacate her apartment for ten to twelve days; however, she refused. (*Id.* at 28–29.) Defendants then offered Plaintiff a vacant apartment in the Avalon Princeton and a chance to stay in a motel while Defendants fixed the apartment. (*Id.* at 30.)

Now, Plaintiff claims that "rather than hire competent reputable personnel and companies to repair the mold damage and to fix the faulty construction, and to properly remediate the effects of the mold, Defendants did not do proper, safe, and necessary repairs." (*Id.* at 36 (cleaned up)).

To make matters worse, Plaintiff alleges that "instead of removing the mold," the Avalon Princeton property manager hired a friend—who is also a lawyer—to evict Plaintiff.  (*Id.*)  Together, the property manager and friend have purportedly harassed, threatened, and lied to Plaintiff for over six months.  (*Id.* at 7.)  As a result, Plaintiff claims that Defendants have "engaged in a campaign of fraud, harassment, lies, threats, and abuse" towards Plaintiff.  (*Id.*)

Plaintiff adds that Defendants have purposefully blocked an inspection of the apartment ordered by the New Jersey Department of Consumer Affairs, (*id.* at 9), and that Defendants failed to hire a mold removal company for Plaintiff because she is "poor" and not "rich."  (*Id.* at 11, 12.)  Plaintiff contends that Defendants engaged in negligent hiring and negligent retention, and failed to train, retrain, and properly supervise employees.  (*Id.* at 26.)  As a result of the ongoing dispute regarding the mold, Plaintiff alleges that Defendants have purposefully withheld the lease renewal from Plaintiff in retaliation of state and federal laws.  (*Id.* at 34.)  As a direct and proximate result of Defendants' negligence, Plaintiff alleges that the "[a]partment was defective, damaged, and not reasonably fit," and Plaintiff was injured and lost use of the property.  (*Id.* at 38.)

Plaintiff brings twenty-one counts in her Fourth Amended Complaint that the Court will attempt to summarize: (1) negligence; (2) breach of contract; (3) breach of a fiduciary duty; (4) breach of the duty of care; (5) fraud; (6) breach of trust/negligent misrepresentation; (7) fraud and misrepresentations; (8) breach of the warranty of habitability; (9) intentional infliction of emotional distress; (10) harassment; (11) breach of the warranty of quiet enjoyment; (12) gross negligence; (13) reckless endangerment; (14) incompetence; (15) disparate treatment due to Plaintiff's wealth; (16) sex discrimination; (17) age discrimination; (18) threatening behavior; (19) defamation and libel; (20) emotional distress; and (21) disparate treatment.  (*Id.* at 39–44.)

## II.    SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1332 given that the parties are diverse and the amount in controversy exceeds $75,000 dollars.

## III.    LEGAL STANDARD

### A.    Rule 12(b)(6)

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Lastly, generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). But where a document is "integral to or explicitly relied upon in the complaint," it "may be considered without converting the motion to dismiss into one for summary judgment" under Rule 56. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

## B.    Rule 9

Fraud-based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Rule 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007). The level of particularity required is such that a defendant is provided with sufficient details to be put on notice of the "precise misconduct with which [it is] charged." *Id*. at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted).

## IV.    <u>DISCUSSION</u>

Plaintiff in this matter is proceeding *pro se*. "The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Atty. Gen. of the U.S.,* 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519,

520–21 (1972).  "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally."  *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citation omitted).  "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'"  *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  "[T]here are limits to [the courts'] . . . flexibility. . . .  [*P*]*ro se* litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief."  *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

Defendants argue that the Court should grant their Motion to Dismiss as to Schall because the Fourth Amended Complaint is "completely devoid of any allegations that Schall was involved, personally or otherwise, in the alleged mold removal in Plaintiff's apartment."  (Moving Br. at 1.)  As to AvalonBay, Defendants argue that each count and allegation in the Fourth Amended Complaint are conclusory and not adequately pled.  (*Id.* at 10–20.)

In Plaintiff's three opposition briefs, Plaintiff contends that she suffered serious injuries as a result of the mold, (Opp'n Br. I at 1–3), and that Defendant breached the lease agreement.  (*Id.* at 3.)  Instead of showing why the Fourth Amended Complaint should not be dismissed for failure to state a claim, Plaintiff merely reiterates the allegations made in the Fourth Amended Complaint, and summarily writes that Defendants' "actions . . . [constitute] fraud, harassment and retaliation." (*Id.* at 19.)  Plaintiff also claims that her causes of action for negligence and gross negligence "should not be dismissed."  (*Id.*)  Plaintiff adds that the Court has improperly stopped her from

filing another amended complaint.  (*Id.* at 42.)  Plaintiff's Second Opposition adds the elements of fraud and other claims, and then, in a conclusory manner, argues that her case should not be dismissed.  (*See generally* Opp'n Br. II.)

In a reply brief, in addition to reiterating arguments already made, Defendants contend that Plaintiff's opposition briefs are "riddled with claims stemming from a separate and distinct" eviction matter in state court.  (Reply Br. 3 n.3.)[6]  Defendants add that Plaintiff's fifth request to amend her complaint "can only be seen to harass," and that the Court should disregard "Plaintiff's Amended and Second Amended Opposition Papers."  (*Id.* n.4.)

The Court will first consider whether to dismiss Schall, and then will proceed with an analysis of each count with respect to AvalonBay.

## A.    Whether to Dismiss Schall

As an initial matter, Plaintiff's allegations with respect to Schall are conclusory and fail to meet the standard set forth in *Iqbal* and *Twombly*.  Plaintiff alleges that "CEO Benjamin Schall . . . h[as] purposefully kept Plaintiff living in a [mold] filled apartment."  (Fourth Am. Compl. at 7.)  Other than providing Schall's address and claiming that he purposefully kept mold in the apartment, Schall is not alleged to have done anything wrong.  There are no allegations illustrating Schall's involvement in the alleged fraud or that he himself harmed Plaintiff.  Consequently, the

---

[6] In addition to Defendants' reference to Plaintiff's eviction matter in state court, docket entry 58-2 is a notice of motion by Defendants to enforce a May 22, 2024 settlement entered into between Defendants and Plaintiff in state court.  (*See* ECF No. 58-2.)  That settlement agreement provided that Plaintiff was to stay on the premises and continue paying rent.  (ECF No. 58-8.)  To the extent Plaintiff seeks relief from her state court landlord-tenant proceedings, those claims are barred by the *Rooker-Feldman* doctrine which prohibits a lower federal court from exercising jurisdiction over a case that would be the functional equivalent of an appeal from a state court judgment.  *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923).  The *Rooker-Feldman* doctrine applies when: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments;' (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the state court to review and reject the state judgments."  *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  This doctrine is routinely applied where there have been previously litigated state court actions related to landlord-tenant matters, as is the case here.  The Court, however, liberally reads Plaintiff's Fourth Amended Complaint to assert additional claims and injuries not related to the state court proceedings.

Fourth Amended Complaint does not give Schall notice of what the claims against him are and the grounds upon which they rest. *See Twombly*, 550 U.S. at 555.

Plaintiff's claim for piercing the corporate veil, to the extent she seeks to sue Schall in his individual capacity, is also inadequately pled. Under New Jersey law[7], courts "begin with the fundamental proposition[] that a corporation is a separate entity from its shareholders . . . and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983). A court can "ignore a corporation's separate entity in order to prevent it 'from being used to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law.'" *Rowen Petroleum Props., LLC v. Hollywood Tanning Sys., Inc.*, 899 F. Supp. 2d 303, 308 (D.N.J. 2012) (quoting *Melikian v. Corradetti*, 791 F.2d 274, 281 (3d Cir. 1986)).

To pierce the corporate veil: (1) "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist;" and (2) "the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019). To ascertain whether the first element is satisfied, courts consider a variety of factors, including "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, [], siphoning of funds of the corporation by the dominant stockholder, non-function of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder." *Watson v. Sunrise Sr. Living Servs., Inc.*, Civ. No. 10-230, 2013 WL 103966, at *13 (D.N.J. Jan. 8, 2013). Regarding the second element, "courts . . . inquire as to whether the parent corporation via the

---

[7] The parties cite New Jersey law in their briefs, and therefore, the Court accepts, for the purpose of these motions, that New Jersey law applies to their dispute.

corporate form, perpetrated a fraud, injustice, or the like." *Id.* (internal citations and quotations omitted).

Here, Plaintiff has simply failed to allege both elements. The Fourth Amended Complaint does not show that Schall exercised "such dominion or control" over AvalonBay that is required for piercing the corporate veil. *See Marketvision/Gateway Rsch., Inc. v. Priority Pay Payroll, LLC*, Civ. No. 10-1537, 2011 WL 1640459, at *4 (D.N.J. Apr. 29, 2011). Additionally, Plaintiff fails to allege any of the non-binding factors relevant to a corporate veil inquiry that the Third Circuit instructs courts to analyze. *See Holzli v. DeLuca Enters.*, Civ. No. 11-06148, 2012 WL 983693, at *2 (D.N.J. Mar. 21, 2012) (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988)). As a final point, Plaintiff has not pled, in anything other than a conclusory manner, that Schall, via the corporate form, perpetrated a fraud, injustice, or the like. *Id.* at *2 (citing *Chen v. HD Dimension, Corp.*, Civ. No. 10-863, 2010 WL 4721514, at *4 (D.N.J. Nov. 15, 2010)). Accordingly, Plaintiff has failed to state a claim against Schall in his individual capacity, and the claims against him will be dismissed without prejudice.

### B.    Whether to Dismiss Plaintiff's Twenty-One Counts Against AvalonBay

The Court next considers the twenty-one claims alleged against AvalonBay.

#### 1.    Negligence (Counts One and Four) and Gross Negligence (Count Twelve)

To state a claim for negligence under New Jersey law, a plaintiff must allege "(1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages." *Campbell Soup Supply Co. LLC v. Protenergy Nat. Foods Corp.*, Civ. No. 16-684, 2016 WL 7104840, at *2 (D.N.J. Dec. 5, 2016); *Est. of Grieco v. Nat'l Med. Consultants, P.C.*, Civ. No. 16-1959, 2020 WL 13580931, at *3 (D.N.J. Jan. 31, 2020).

Plaintiff has properly alleged that AvalonBay owes Plaintiff a duty. (*See* Fourth Am. Compl. at 4, 39.) However, she has not sufficiently pled allegations of breach of that duty,

causation, or damages.  First, the allegations in the Fourth Amended Complaint related to negligence are conclusory and bare assertions.  For example, Plaintiff alleges, without more, that "[m]ore [mold] is now growing in Plaintiff's apartment due to Defendant's [n]egligence and [i]ncompetence and [f]aulty [c]onstruction."  (*Id.* at 4.)  Contrary to Plaintiff's assertions, the Fourth Amended Complaint elsewhere alleges that Defendants offered for Plaintiff to move to another vacant apartment at the Avalon Princeton, and that Defendants insisted on having Plaintiff stay at a motel ten miles away.  (*Id.* at 29–30.)  These allegations contradict Plaintiff's conclusory statements that Defendants breached their duty of care.  On this point, the Fourth Amended Complaint also provides at length the efforts AvalonBay went to assist Plaintiff to remedy the mold issues, again contradicting Plaintiff's claim of breach.  (*See, e.g., id.* at 14, 32, 34.)  As a final point, the Court agrees with Defendants that Plaintiff does not specifically allege how she was injured.

Accordingly, Counts One and Four alleging negligence and the breach of the duty of care respectively will be dismissed without prejudice.

Relatedly, Count Twelve alleges gross negligence.  Under New Jersey law, the essential elements to state a claim for negligence and gross negligence are identical: (1) the existence of a duty owed by Defendants towards Plaintiff; (2) a breach of that duty by Defendants; (3) that Defendants' breach caused Plaintiff's injuries; and (4) that Plaintiff suffered damages as a result. *Sines v. Darling Ingredients Inc.*, Civ. No. 19-19121, 2020 WL 5015488, at *5 (D.N.J. Aug. 25, 2020).  The difference between gross negligence and simple negligence is one of degree and not the quality of proof.  *Mills v. Byck*, Civ. No. 19-14349, 2019 WL 3347169, at *6 (D.N.J. July 24, 2019).  To that end, "[w]hereas negligence is the failure to exercise ordinary or reasonable care that leads to a natural and probable injury, gross negligence is the failure to exercise slight care or

diligence." *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 754 (N.J. 2016) (quotations omitted).

To properly allege gross negligence, a plaintiff must plead "something more than 'inattention' or 'mistaken judgment.'" *Moretz v. Trustees of Princeton*, Civ. No. 21-19822, 2023 WL 9017155, at *5 (D.N.J. Dec. 29, 2023) (holding that plaintiff sufficiently pled the higher standard of gross negligence where the complaint alleged the defendant university had actual knowledge of a teacher's prior sexual misconduct); *see also Doe ex rel. Doe v. Small*, 654 F. Supp. 3d 376, 396 (D.N.J. 2023) (stating gross negligence is "the failure to exercise slight care or diligence" (quoting *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 745 (N.J. 2016))).

Insofar as the Court has already concluded that the Fourth Amended Complaint does not plead a plausible claim for simple negligence, the Court further finds that it does not plausibly plead an elevated claim for gross negligence. This claim will therefore also be dismissed without prejudice.

## 2.    Breach of Contract (Count Two)

To plead a claim for breach of contract under New Jersey law, a plaintiff must allege "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002); *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) ("Our law imposes on a plaintiff the burden to prove four elements: first, that '[t]he parties entered into a contract containing certain terms'; second, that 'plaintiff[s] did what the contract required [them] to do'; third, that 'defendant[s] did not do what the contract required [them] to do[,]' defined as a 'breach of the contract'; and fourth, that 'defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[s]'" (quoting N.J. Model Civil Instr. 4.10A (May 1998))). A party to the contract "violates the terms of a contract by failing to fulfill a requirement

enumerated in the agreement." *Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019).

Contrary to Defendants' position, it is sufficiently clear to the Court based on a liberal reading of the Fourth Amended Complaint that the alleged contract between the parties is their lease agreement.[8]  However, Plaintiff has still failed to adequately plead breach of that lease agreement.  First, Plaintiff does not adequately allege facts to show that she complied with her lease obligations.  Plaintiff states in a conclusory fashion that "she has never at any time violated the terms of the lease."  (*Id.* at 20.)  Additionally, Plaintiff fails to allege that there was in fact a breach of that lease, especially because allegations within the Fourth Amended Complaint show that Defendants did indeed attempt to remediate the mold.  Similar to her negligence claim, Plaintiff also does not specifically allege her injury resulting from the alleged breach of contract.

Importantly, damages for breach of contract are supposed to make the Plaintiff whole.  *See Ready & Motivated Minds, LLC v. Ceridian Corp.*, Civ. No. 10-1654, 2012 WL 13034313, at *12 (D.N.J. Sept. 28, 2012) (noting that the idea is to put the plaintiff in the same position she would have been in but for the breach of contract).  Plaintiff, however, seeks $100 million without articulating the injuries that flowed from the alleged breach of contract.

Accordingly, Plaintiff's breach of contract claim (Count Two) will also be dismissed without prejudice.

---

[8] Plaintiff need not attach the lease agreement to the Fourth Amended Complaint, contrary to Defendants' position. *See Latraverse v. Kia Motors of Am., Inc.*, Civ. No. 10-6133, 2011 WL 3273150, at *2 (D.N.J. July 27, 2011) (noting that "[u]nder the Federal Rules, a plaintiff is not required to include the contract with the complaint, or allege the specific provisions violated in the contract" and "the complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond").

### 3.    Breach of Fiduciary Duty/Breach of Trust (Counts Three and Six)

To establish a breach of fiduciary duty, a plaintiff must plausibly allege "1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages." *Robinson v. Maintech Inc.*, Civ. No. 23-04458, 2024 WL 5165325, at *3 (D.N.J. Dec. 19, 2024) (quoting *Read v. Profeta*, 397 F. Supp. 3d 597, 633 (D.N.J. 2019)). Before a court can find a breach of a fiduciary duty, a plaintiff must allege that defendant owed a fiduciary duty to the plaintiff. *See Goodman v. Goldman, Sachs & Co.*, Civ. No. 10-1247, 2010 WL 5186180, at *10 (D.N.J. Dec. 14, 2010). A hallmark of a fiduciary relationship is one party's placement of "trust and confidence in another." *Big M, Inc. v. Dryden Advisory Grp.*, Civ. No. 08-3567, 2009 WL 1905106, at * 24 (D.N.J. June 30, 2009) (explaining that "[a] fiduciary obligation exists whenever one person places special 'trust and confidence' in another person upon whom the person relies to exercise discretion and expertise upon behalf of that person.").

Here, Plaintiff has not alleged the existence of a fiduciary relationship or that Defendants owed a fiduciary duty to Plaintiff. The Fourth Amended Complaint, again, contains conclusory allegations that Defendants operated in an untrustworthy manner, (Fourth Am. Compl. at 31), and that "Plaintiff has suffered from Defendants breach of trust to Plaintiff." (*Id.* at 41.) These allegations do not meet the liberal pleading standards of *Iqbal* and *Twombly*. Plaintiff's lack of trust claim can also be read to arise from fraud, which is subject to the heightened pleading standard of Rule 9(b) and is not particularly pled. Notably, the relationship between a landlord and tenant is not a "definite fiduciary relationship." *Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104, 111 (3d Cir. 1994). Moreover, nothing in the Fourth Amended Complaint either suggests that the parties expressly, or impliedly by their conduct, reposed trust and confidence in one another. Even assuming there is a fiduciary relationship, Plaintiff has not alleged that there was a breach of a

fiduciary duty, especially in light of the conflicting allegations that suggest otherwise or that there were resulting damages from said breach.

Accordingly, Counts Three and Six will be dismissed without prejudice.

### 4. Fraud and Mispresentations (Counts Five and Seven)

To state a claim for common law fraud in New Jersey, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 316 (D.N.J. 2013). Fraud is subject to the heightened pleading standard of Rule 9(b).

Here, Plaintiff has failed to adequately plead fraud or misrepresentation. Specifically, and fatal to her claim for fraud, Plaintiff does not allege facts with particularity to put Defendants on notice of the precise misconduct with which they are charged nor does she allege the "who, what, when, where and how of the events at issue." *In re Suprema Specialties*, 438 F.3d at 276–77. The Fourth Amended Complaint merely provides that Defendants "engaged in a campaign of fraud, lies, threats, abuse, and harassment in retaliation," (Fourth Am. Compl. at 6), and that "Defendants made a material misrepresentation of a fact," (*id.* at 40.) Plaintiff does not allege which statements were misrepresentations, whether Defendants believed them to be false, and which statements she relied on. While Plaintiff does allege that Heredia lied to her; she does not allege, however, any of the other elements of fraud to survive a motion to dismiss. (*See, e.g., id.* at 7, 14.) The allegations in the Fourth Amended Complaint related to fraud are therefore inadequate.

Accordingly, Plaintiff's fraud claims will be dismissed without prejudice.

5.    Breach of the Implied Warranty of Habitability and the Covenant of Quiet Enjoyment (Counts Eight and Eleven)

An implied warranty of habitability inheres in every residential lease and represents a promise by a landlord that "there are no latent defects in facilities vital to the use of the premises for residential purposes . . . ." *Marini v. Ireland*, 265 A.2d 526, 534 (N.J. 1970); *James v. Harrah's Resort Atlantic City*, Civ. No. 14-5434, 2016 WL 7408845, at *8 (D.N.J. Dec. 22, 2016).   A prerequisite to maintaining a claim for breach of the implied warranty of habitability is: (1) the tenant gave the landlord positive and seasonable notice of the alleged defect; (2) the tenant requested its correction; and (3) the tenant allowed the landlord a reasonable period of time to effect the repair or replacement.   *Sanders ex rel Sanders v. Rosenberg*, Civ. No. 06-1406, 2008 WL 2945983, at *3 (D.N.J. July 30, 2008).

Here, to Plaintiff's credit, she does allege that she notified Defendants of the mold.   (*See* Fourth Am. Compl. at 4.)   Having mold on the property in certain circumstances is also undoubtedly a condition that could render an apartment unsuitable to a reasonable person. However, Plaintiff has failed to allege how much mold existed, that Defendants' cure was insufficient, what happened to her as a result of the mold, whether she allowed Defendants time to cure the problem, and that her *specific* home was not suitable because of the mold.   Fatal to her claim is that although Plaintiff notified Defendants, Defendants did attempt to remedy the situation.   In fact, the Fourth Amended Complaint provides that Defendants sent a maintenance team to the apartment and sought to have Plaintiff stay in a vacant apartment or motel while the problem was being fixed.

As a final point related to the implied warranty of habitability, in New Jersey, when a landlord breaches this warranty, a tenant has three options: first, a tenant may "regard the breach as a constructive eviction and quit the premises without further liability to the landlord for rent";

second, a tenant may also "give notice to the landlord of the defect and if the landlord fails to remedy the condition, the tenant himself may do so, deducting the reasonable cost of repair from his rent"; and third, a tenant may "seek from the court an abatement of rent calculated on the basis of the difference, if any, between the rent reserved and the market value of the premises in their defective condition." *Drew v. Pullen,* 412 A.2d 1331, 1333 (N.J. Super. Ct. App. Div. 1980). Here, the facts alleged demonstrate that Plaintiff remained on the property and did not seek to remedy the problem herself under the three options discussed. Now, Plaintiff seeks $100 million from Defendants. Simply put, even assuming Defendants breached the implied warranty of habitability—which they did not—Plaintiff does not seek a proper remedy under New Jersey law.

With respect to the covenant of quiet enjoyment, Plaintiff similarly has not alleged how she has not enjoyed her specific property as a result of the mold, and her allegations are conclusory. For example, without more, Plaintiff alleges that "Defendants have [d]eprived Plaintiff of Plaintiff's [l]egal [r]ight to the [q]uiet [e]njoyment of a [h]ealthy [a]partment." This bare assertion is insufficient to survive a motion to dismiss.

Accordingly, Counts Eight and Eleven will be dismissed without prejudice.

6.   Intentional Infliction of Emotional Distress (Counts Nine and Twenty)

To state a claim for intentional infliction of emotional distress under New Jersey law, a plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Okane v. Tropicana Ent., Inc.*, Civ. No. 12-6707, 2013 WL 56088, at *3 (E.D. Pa. Jan. 3, 2013) (citing *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)); *Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 316 (D.N.J. 2016).

Here, Plaintiff has neither alleged conduct by Defendants that is so outrageous, nor has she alleged that Defendants intentionally caused emotional distress or what that emotional distress is.

*See Kennedy v. Am. Airlines Inc.*, 195 F. Supp. 3d 646, 658 (D.N.J. 2016) ("The emotional distress claims advanced here require no complex discussion, because Plaintiff fails to plead intentional and outrageous conduct by the Defendants, and fails to provide any details on the severity of his alleged distress." (quotation marks omitted)).  In the Fourth Amended Complaint, Plaintiff states that "Defendants . . . have been using and abusing the legal system as a weapon to threaten and harass Plaintiff and inflict emotional distress and harm upon plaintiff."  (Fourth Am. Compl. at 7 (cleaned up)).  Plaintiff also alleges that "Defendants have inflected [] emotional distress and pain and suffering upon Plaintiff," (*id.* at 41 (cleaned up)), and that "Defendants have inflicted emotional distress upon Plaintiff and physical harm upon Plaintiff."  (*Id.* at 44).  These allegations are conclusory, fail to show that Defendant's conduct was outrageous, fail to allege the distress Plaintiff suffered, and fail to allege that Defendants acted intentionally.  *See Stampone v. Walker*, Civ. No. 15–6956, 2016 WL 885114, at *8 (D.N.J. Mar. 8, 2016) (dismissing an emotional distress claim for failure to plead "intentional and outrageous" conduct); *Moran v. DaVita, Inc.*, 441 Fed. App'x. 942, 947 (3d Cir. 2011) (explaining that the emotional distress must be "so severe that no reasonable person could be expected to endure it").

In short, even assuming there was intentional conduct, Plaintiff simply provides no explanation or allegation concerning "how her life has been affected by her distress, how her daily routine had changed, [or] how [the] intensity of her distress has impacted her life."  *See Fogarty v. Household Fin. Corp. III*, Civ. No. 14-4525, 2015 WL 852071, at *19 (D.N.J. Feb. 25, 2015) (citing *Buckley*, 544 A.2d at 864).  In sum, Plaintiff has failed to allege facts to support a claim for intentional infliction of emotional distress.

Accordingly, Counts Nine and Twenty will be dismissed without prejudice.

7.    Harassment (Count Ten)

The Fourth Amended Complaint states that "Defendant[s] have engaged in a campaign of fraud, lies, threats, abuse, and harassment in retaliation," (Fourth Am. Compl. at 6), the property manager has paid her friend to "harass, threaten, and abuse Plaintiff," (*id.*), "Defendants continue to harass Plaintiff and are attempting to force Plaintiff to permit Heredia back into Plaintiff's apartment as a condition for the [mold] Removal, (*id.* at 37), and "Defendants have harassed Plaintiff." (*Id.* at 42.)  Plaintiff merely asserts that she was harassed without stating the legal basis for her claim.  The Court understands Plaintiff's harassment claims to be brought under the common law, or under N.J. Stat. Ann. § 2C:33-4, which, as a threshold matter, is an impermissible basis to bring a civil action as a private plaintiff.

To the extent Plaintiff's harassment claim arises from common law, that claim may be precluded if it overlaps with her New Jersey Law Against Discrimination claims, which are to be discussed later in this Opinion.[9]  *See Butler v. Sherman, Silverstein & Kohl, P.C.,* 755 F. Supp. 1259 (D.N.J. 1990) ("Because there already exists a statutory remedy for plaintiff, it would be inappropriate for this court to extend New Jersey common law in this case."); *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 430 (D.N.J. 2000).  Even if the harassment claim is not precluded, there is little caselaw that addresses the common law tort of harassment.  It is generally understood, however, that a requisite element of the "tort of harassment" is that the alleged tortious conduct be without justification, or that it served no legitimate purpose.  *Olick v. Northampton Cnty.*, Civ. No. 07-10880, 2010 WL 4509828, at *7 (Bankr. E.D. Pa. Nov. 9, 2010) (citing Restatement (Second) of Torts § 870 (1979) (requiring that tortious conduct be "not justifiable under the circumstances")).

---

[9] The Court notes that Plaintiff's harassment claims may also be duplicative of her intentional infliction of emotional distress claim, which as stated, fail to meet Rule 12(b)(6)'s pleading standard.

Nonetheless, there are no facts alleged in the Fourth Amended Complaint to support a claim for harassment.  More specifically, Plaintiff does not state how Defendants harassed Plaintiff, how often the alleged harassment took place, and what the exact threats were.  There is nothing in the Fourth Amended Complaint to indicate that Defendants repeatedly engaged in alarming conduct or acted inconveniently to Plaintiff as to cause annoyance.  *See* N.J. Stat. Ann. § 2C:33-4.  Thus, Plaintiff's harassment claim is conclusory and leaves Defendants and the Court guessing as to the authority she seeks relief under.

Accordingly, this claims will also be dismissed without prejudice.

### 8.    Reckless Endangerment (Count Thirteen), Incompetence (Count Fourteen), and Threatening Behavior (Count Eighteen)

The Court is unable to construe Plaintiff's claim for reckless endangerment, incompetence, or threatening behavior.  The Court is aware of no civil remedy for these claims.  As best the Court can intuit, those allegations would fall within the ambit of negligence, gross negligence, harassment, and intentional infliction of emotional distress.  These claims, being duplicative, will be dismissed.  *See Grace's Dream, LLC v. PB Holdco, LLC*, Civ. No. 24-5651, 2025 WL 396756, at *7 (D.N.J. Feb. 5, 2025) (dismissing claims as duplicative because they arose from the same factual predicate); *M&M Trucking Gudullu, LLC v. Liberty Kenworth-Hino Truck Sales, Inc.*, 653 F. Supp. 3d 162, 168 (D.N.J. 2023).

Accordingly, the Court will dismiss Counts Thirteen, Fourteen, and Eighteen without prejudice.

### 9.    Disparate Treatment (Counts Fifteen and Twenty-one)

Plaintiff moreover alleges that she was treated differently by Defendants because she is "poor."  (Fourth Am. Compl. at 12, 13.)  The Court infers that Plaintiff is bringing a claim under the New Jersey Law Against Discrimination ("NJLAD")  As Defendants' correctly point out,

"economic disadvantage" is not a protected class under the NJLAD. *See* N.J. Stat. Ann. § 10:5-12(g). Thus, Plaintiff fails to state a claim for disparate treatment and Counts Fifteen and Twenty-one will be dismissed without prejudice.

### 10. Sex and Age Discrimination (Counts Sixteen and Seventeen)

Plaintiff alleges that "Defendants have discriminated against Plaintiff on the basis of sex," (Fourth Am. Compl. at 43), and that "Defendants have discriminated against Plaintiff on the basis of age." (*Id.*) The Court again infers that Plaintiff is intending to rely on the NJLAD. The above two allegations are the only allegations in the forty-four page complaint that reference sex and age discrimination. The Fourth Amended Complaint does not allege the sex or age of Plaintiff, nor does it allege any discrimination or injury to Plaintiff as a result of Defendants' alleged behavior.

Accordingly, Counts Sixteen and Seventeen will be dismissed without prejudice.

### 11. Defamation and Libel (Count Nineteen)

Under New Jersey common law, a claim for defamation consists of three elements: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1113 (N.J. 2009) (quoting *DeAngelis v. Hill*, 847 A.2d 1261, 1267–68 (N.J. 2004)); *see also Moriarty v. Classic Auto Grp., Inc.*, Civ. No. 13-5222, 2014 WL 2601887, at *5 (D.N.J. June 11, 2014) (reciting and applying the same elements). In order to survive dismissal, Plaintiff must therefore allege that Defendants (1) made a false, defamatory statement concerning the plaintiff, and (2) communicated that statement to a third party.

Plaintiff's defamation claim in this instance falls far short of these requirements. *See Kennedy v. Am. Airlines Inc.*, 195 F. Supp. 3d 646, 655 (D.N.J. 2016). The Fourth Amended Complaint has one mention of defamation: "Defendants have defamed and libeled Plaintiff."

(Fourth Am. Compl. at 43.)  This statement is a bald, conclusory assertion, and does not plead a plausible claim for defamation.  Specifically, Plaintiff does not allege that a false statement was made, what the statement was, why it was defamatory, and that the statement was published or communicated to a third party.  Plaintiff therefore fails to state a claim for defamation.  For the same reasons, Plaintiff's libel claim fails.  *See Doug Grant, Inc. v. Greate Bay Casino Corp*, 3 F. Supp. 2d 518, 538 (D.N.J. 1998) ("In order to state a claim for libel or slander, a complaint must allege the defamatory words, the person who uttered them, and when, where, and to whom they were published.").

Accordingly, Count Nineteen will be dismissed without prejudice.

### C.    Dismissal without Prejudice

As a final matter, as noted, these dismissals will be without prejudice.  The Third Circuit has cautioned that a district court may deny leave to amend only if (1) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party, or (2) the amendment would be futile.  *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984).  Here, although Plaintiff has amended her Complaint four times, she is proceeding *pro se* and this is the first time the Court has addressed the deficiencies in her complaints.  Therefore, the Court will dismiss all counts against Defendants without prejudice.  The failure to cure the deficiencies identified in this Opinion in a fifth amended complaint may warrant dismissal with prejudice.

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Court will **GRANT** Defendants' Motion to Dismiss (ECF No. 42.)  Plaintiff's Fourth Amended Complaint (including all twenty-one counts) will be dismissed without prejudice.  Plaintiff will be given leave to file a fifth amended complaint within thirty (30) days from the date of the accompanying Order, limited to addressing the deficiencies

identified herein.  Additionally, for reasons articulated, Plaintiff's Motion for Default Judgment

(ECF No. 44) will be **DENIED**.  An appropriate Order will follow.


Date: March 3, 2025

<u>s/ Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**