**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARCIA RAFTER**, <br><br> Plaintiff, <br><br> v. <br><br> **AVALONBAY COMMUNITIES, INC.**, *et al.*, <br><br> Defendants. | Civil Action No. 23-13674 (ZNQ) (JTQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants AvalonBay Communities, Inc. ("AvalonBay") and Benjamin Schall ("Schall") (collectively, "Defendants") on June 2, 2025. (ECF No. 77.) Defendants filed a brief in support of their Motion. ("Moving Br.," ECF No. 77-1.) *Pro se* Plaintiff Marcia Rafter ("Plaintiff") filed an Opposition ("Opp.," ECF No. 80), to which Defendants replied ("Reply," ECF No. 83).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Defendants' Motion.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

   **A.      PROCEDURAL HISTORY**

Plaintiff filed her initial complaint on August 31, 2023. (ECF No. 1.) Thereafter, she amended her complaint four times. (ECF Nos. 3, 5, 10, 35.) Defendants then filed a Motion to

1

Dismiss the Fourth Amended Complaint (ECF No. 42), which the Court granted on March 3, 2025 (ECF No. 64).  The Court granted Plaintiff leave to file a Fifth Amended Complaint (ECF No. 65), which she did on May 12, 2025 (ECF No. 75).  Defendants subsequently filed a Motion to Dismiss the Fifth Amended Complaint, and that motion is now fully briefed.  (ECF Nos. 77, 80, 83.)

    **B.**    **BACKGROUND**[1]

Plaintiff rents an apartment from AvalonBay in Princeton, New Jersey ("Avalon Princeton").  (Fifth Am. Compl. at 4.)[2]  Her initial lease began on February 18, 2020, and renewed each year for a one-year term.  (*Id.*)  Plaintiff's unit is an Affordable Housing Unit that AvalonBay was required to provide in order to get approval from the Town of Princeton and Mercer County to build Avalon Princeton.  (*Id.*)

In July 2021 and September 2021, Plaintiff alleges that Defendants failed to "provisionally and properly remove mold and repair faulty construction and make the apartment safe for occupancy."  (*Id.* at 6.)  Due to Defendants' failures, Plaintiff alleges that she has been sick since 2021 from the mold.  (*Id.*)  Plaintiff claims that she notified Defendants of the mold, yet Defendants took no action other than "a campaign of retaliation and reprisals against Plaintiff."  (*Id.* at 7.)

As alleged, in 2021 water started leaking from the ceiling of Plaintiff's apartment.  (*Id.*)  Lewis Heredia ("Heredia"), a maintenance employee for AvalonBay, attended to the issue.  (*Id.*)  Heredia stated that the water was leaking from an air-conditioning unit in the apartment directly above Plaintiff's apartment.  (*Id.*)  According to Plaintiff, Heredia told her that he failed to drain the air-conditioning drain during his 2020 fall preventive maintenance.  (*Id.* at 8.)  Due to this error, "the entire kitchen ceiling was wet with water."  (*Id.*)

---

[1] For the purpose of considering this Motion, the Court accepts all factual allegations in the Complaint as true.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).
[2] The Court cites to the page numbers of the Fifth Amended Complaint herein given that there are no numbered paragraphs in the Fifth Amended Complaint.

To fix the water damage, Heredia sprayed a canned product called "ZZZ" on the ceiling. (*Id.* at 9.) Two months later, in September 2021, Plaintiff found black mold in her hall closet located in the kitchen. (*Id.* at 10.) As alleged, "the black mold was on the walls, the ceiling, the base boards, and mold had climbed the interior door frame like ivy." (*Id.*) Heredia attended to the mold as well, explaining to Plaintiff that the "closest had to be ripped out." (*Id.* at 12.) When Heredia and two other men came to the apartment to address the mold issue, Plaintiff reluctantly let them in, but according to Plaintiff, the maintenance team failed to properly address the situation. (*Id.* at 15–16.) Because of this botched mold removal, the air in Plaintiff's apartment was not remediated and Plaintiff became sick. (*Id.*) Plaintiff further claims that Avalon Princeton's property manager, Natalie Rana Pla ("Pla"), "refused to enter the September 2021 mold removal into the maintenance records" to coverup the faulty mold removal. (*Id.* at 17–18.)

According to Plaintiff, mold continued to grow in her apartment. (*Id.* at 18.) Plaintiff continued to advise management of the mold, yet they allegedly did nothing. (*Id.*) In August 2023, Plaintiff allegedly found mold growing in the hall closet again. (*Id.* at 19.) At that time, Plaintiff wrote a letter to the CEO of AvalonBay, Benjamin Schall, but never heard back. (*Id.*) Plaintiff further alleges that after Schall became CEO of AvalonBay, AvalonBay installed "LATCH" manufactured electronic locks on apartment doors at Avalon Princeton. (*Id.*) Over Plaintiff's objections, the LATCH lock was forcibly installed on her apartment door. (*Id.*) Plaintiff further alleges that AvalonBay provided LATCH with access to residents' personal information, and that AvalonBay sold LATCH all of Plaintiff's personal information. (*Id.* at 20.) Plaintiff claims that Defendants used LATCH to "monetize human beings." (*Id.*)

Next, Plaintiff claims she learned that AvalonBay had been using Belfor, a professional mold removal company, for eight years to remove mold at AvalonBay. (*Id.* at 22.) Plaintiff claims

3

that "employing Belfor to remove mold was stand (sic) operating procedure at Avalon Princeton" and that Defendants "merely chose not to use Belfor to remove mold from Plaintiff's apartment in 2021." (*Id.*)  According to Plaintiff, Belfor installs air scrubbers, wears hazmat suits, and wraps personal belongings the day before mold remediation. (*Id.* at 23.)  Plaintiff claims that Defendants "gambled" with her health and life by having two unidentified men spend an hour and a half in her apartment, instead of sending Belfor. (*Id.*)  Plaintiff further alleges this was done to save money and that hiring Belfor "did not fit Defendants' budgets and money needs." (*Id.* at 24.)

The Fifth Amended Complaint also includes allegations related to a separate eviction matter in state court. (*Id.* at 25.)  Plaintiff alleges that Defendants have filed two lawsuits to evict her, and in the second lawsuit filed a "fraudulent affidavit" that resulted in the state court judge issuing a Judgment for Possession and the Warrant for Removal of Plaintiff from her Avalon Princeton apartment. (*Id.*)  Plaintiff claims that Defendants knew the affidavit was false when it was filed. (*Id.* at 27.)  The affidavit, which is attached to the Fifth Amended Complaint, was certified by Pla. (ECF No. 75-3.)

Plaintiff alleges that as a result of Defendants' failure to properly remove the mold in her apartment, "Defendants have ruined Plaintiff's health." (Fifth Am. Compl. at 29.)  Plaintiff claims that she suffers from "fatigue, memory loss, difficulty focusing and concentrating, vertigo, night sweats, nasal congestion, very low moods, loss of energy, digestive problems, watery itchy eyes, constant need to urinate day and night, mental anguish, exhaustion, hopelessness, emotional distress, anxiety, and loss of quality of life." (*Id.*)  Plaintiff brings eleven counts in her Fifth Amended Complaint: (1) breach of contract; (2) breach of warranty of habitability; (3) breach of duty of care; (4) fraud; (5) negligence; (6) defamation of character and libel; (7) harassment; (8)

intentional infliction of emotional distress; (9) negligent infliction of emotional distress; (10) gross negligence; and (11) consumer fraud.

## II.     SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1332 given that the parties are diverse and the amount in controversy exceeds $75,000 dollars.

## III.    LEGAL STANDARD

### A.     Rule 12(b)(6)

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw

5

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Lastly, generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). But where a document is "integral to or explicitly relied upon in the complaint," it "may be considered without converting the motion to dismiss into one for summary judgment" under Rule 56. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

**B.      Rule 9**

Fraud-based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Rule 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007). The level of particularity required is such that a defendant is provided with sufficient details to be put on notice of the "precise misconduct with which [it is] charged." *Id.* at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted).

6

## IV. DISCUSSION

Plaintiff in this matter is proceeding *pro se*. "The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citation omitted), *abrogated on other grounds by Iqbal*, 556 U.S. at 678. "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[T]here are limits to [the courts'] . . . flexibility. . . . [P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citation omitted).

Defendants argue that Plaintiff's claims against Schall should be dismissed because "the Fifth Amended Complaint is completely devoid of any allegations that Schall was involved, personally or otherwise, in the alleged mold removal in Plaintiff's apartment." (Moving Br. at 1.) As to AvalonBay, Defendants argue that each count and allegation in the Fifth Amended Complaint are conclusory and not adequately pled. (*Id.* at 10–25.)

Plaintiff's Opposition generally fails to address the substantive legal arguments set forth in Defendants' Motion to Dismiss. (*See generally* Opp.) Rather, Plaintiff merely reiterates many of

7

the same allegations made in the Fifth Amended Complaint and includes additional factual allegations not pled in the Fifth Amended Complaint. (*Id.*)

In Reply, Defendants assert that Plaintiff's Opposition does not comply with the procedural rules (Reply at 3), and that Plaintiff's claims should be dismissed with prejudice (Reply at 7–15).

The Court will first consider whether to dismiss Schall and then will proceed with an analysis of each count with respect to AvalonBay.

### A. Whether to Dismiss Schall

Plaintiff's Fifth Amended Complaint is largely devoid of allegations with respect to Schall and therefore fails to meet the pleading standard set forth in *Iqbal* and *Twombly*. The sole allegation with respect to Schall is that, in or around August 2023, Plaintiff sent a letter to Schall "seeking his help to get the apartment repaired" and that Schall allegedly "did nothing to help Plaintiff." (Fifth Am. Compl. at 19.) Plaintiff does not allege that Schall received the letter nor that he had any obligation to respond to it. There are also no allegations that Schall played any substantive role in the management or maintenance of Avalon Princeton, or that Schall even had any knowledge of the events alleged in the Fifth Amended Complaint.[3] Consequently, the Fifth Amended Complaint does not give Schall notice of what the claims against him are and the grounds upon which they rest. *See Twombly*, 550 U.S. at 555.

---

[3] Plaintiff's Opposition includes assertions that Schall owns and operates all the AvalonBay Communities and that Schall is responsible for the culture of AvalonBay. (Opp. at 1.) Plaintiff further contends that Schall was responsible for hiring Pla and Heredia. (Opp. at 5.) Given that these allegations are not included in the Fifth Amended Complaint, the Court may not consider them. *See Walker v. Ocwen Loan Servicing, LLC*, Civ. No. 16-9157, 2017 WL 2957933, at *4 (D.N.J. July 11, 2017) ("The Court's review is limited to the allegations in the Complaint; it cannot consider new theories that are raised for the first time in opposition briefs."). But even if they were alleged, these allegations would still not demonstrate Schall's role, if any, in the mold removal of Plaintiff's apartment. Schall is the CEO of AvalonBay and his office is in Arlington, Virginia, and the alleged mold removal occurred at Plaintiff's apartment in Princeton, New Jersey by low-level employees. (Fifth Am. Compl. at 1, 9–16.) Without more, it is simply not plausible that Schall knew of, or was involved in, the conduct at issue.

**B.     Whether To Dismiss the Counts Against AvalonBay**

Plaintiff brings eleven claims against AvalonBay. The Court will consider each in turn.

1. Breach of Contract (Count I)

To plead a claim for breach of contract under New Jersey law, a plaintiff must allege "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002). A party to the contract "violates the terms of a contract by failing to fulfill a requirement enumerated in the agreement." *Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 391 (N.J. 2019).

Here, Plaintiff alleges that Defendants violated the terms of the lease agreement by failing to "properly fix, repair and maintain Plaintiff's apartment." (Fifth Am. Compl. at 32.) Absent from the Fifth Amended Complaint, however, are any allegations that Plaintiff performed her own contractual duties. Indeed, there is not even a conclusory allegation providing that Plaintiff satisfied her lease obligations. Accordingly, Plaintiff's breach of contract claim will be dismissed. *See DiGiacomo v. Statebridge Co., LLC*, Civ. No. 14-6694, 2015 WL 3904594, at *9 (D.N.J. June 25, 2015) (dismissing a breach of contract claim against the defendant based upon the plaintiff's failure to allege that the plaintiff performed its own contractual obligations).

2. Breach of Warranty of Habitability (Count II)

An implied warranty of habitability inheres in every residential lease and represents a promise by a landlord that "there are no latent defects in facilities vital to the use of the premises for residential purposes . . . ." *Marini v. Ireland*, 265 A.2d 526, 534 (N.J. 1970); *James v. Harrah's Resort Atlantic City*, Civ. No. 14-5434, 2016 WL 7408845, at *8 (D.N.J. Dec. 22, 2016). The New Jersey Supreme Court has created a non-exhaustive list of factors courts should use to determine whether a condition rises to the level of breaching the implied warranty of habitability:

9

> 1. Has there been a violation of any applicable housing code or building or sanitary regulations?
> 2. Is the nature of the deficiency or defect such as to affect a vital facility?
> 3. What is its potential or actual effect upon safety and sanitation?
> 4. For what length of time has it persisted?
> 5. What is the age of the structure?
> 6. What is the amount of the rent?
> 7. Can the tenant be said to have waived the defect or be estopped to complain?
> 8. Was the tenant in any way responsible for the defective condition?

*Berzito v. Gambino*, 308 A.2d 17, 22 (N.J. 1973).  A prerequisite to maintaining a claim for breach of the implied warranty of habitability is: (1) the tenant gave the landlord positive and seasonable notice of the alleged defect; (2) the tenant requested its correction; and (3) the tenant allowed the landlord a reasonable period of time to affect the repair or replacement.  *See Sanders ex rel Sanders v. Rosenberg*, Civ. No. 06-1406, 2008 WL 2945983, at *3 (D.N.J. July 30, 2008).

Here, Plaintiff alleges that she notified Defendants of the mold.  (Fifth Am. Compl. at 6.) The first notification occurred in July 2021, and Plaintiff admits that AvalonBay sent maintenance staff to investigate and remediate the issue.  (*Id.* at 9.)  Two months later, Plaintiff discovered additional mold, to which AvalonBay again responded.  (*Id.* at 10.)  Though Plaintiff alleges that this mold was not properly remediated (*id.* at 18), there are no allegations that Plaintiff notified Defendants of any issues until August 2023, nearly two years after Defendants attempted to remediate the issue.[4]  Given that Plaintiff lived in the apartment for nearly two years before notifying Defendants of another defect, she has not alleged facts to sustain a claim for breach of the implied warranty of habitability prior to August 2023.

---

[4] Plaintiff alleges that she "advised management of the condition" but that management did nothing.  (Fifth Am. Compl. at 18.)  However, there are no allegations regarding when she made these notifications or to whom, and such a conclusory allegation is insufficient to state a claim for relief.  *See Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.")

In August 2023, Plaintiff alleges that she wrote to Schall asking for his help to repair her apartment. (*Id.* at 19.) But it is not clear to the Court how writing a letter to Schall, who was the CEO of AvalonBay, which owns apartment complexes throughout the country, would provide Avalon Princeton with notice of the continued mold issues. Regardless, what is more troubling with the Fifth Amended Complaint, however, is that Plaintiff deleted allegations concerning AvalonBay's retention of Belfor to remediate any alleged mold in Plaintiff's apartment, and AvalonBay's offer to relocate Plaintiff to another apartment or motel while those repairs were taking place. (*See* "Fourth Am. Compl.," ECF No. 35 at 28.) Plaintiff's deletion of these allegations from the Fifth Amended Complaint appears to have been done so that her claim for breach of the implied warranty of habitability (among others) could survive dismissal. But those allegations do not simply disappear, and "[w]hile a district court must accept a plaintiff's allegations as true in ruling on a motion to dismiss, it need to accept these allegations where they contradict what was alleged in a prior Complaint." *Adams v. United of Omaha Life Insur. Co.*, Civ. No. 12-969, 2013 WL 12113225, at *3 (C.D. Cal. Jan. 10, 2013) (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)). Accordingly, Plaintiff's claim for breach of the implied warranty of habitability must be dismissed.

3. <u>Negligence and Gross Negligence (Counts III, V, and X)</u>

To state a claim for negligence under New Jersey law, a plaintiff must allege "(1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages." *Campbell Soup Supply Co. LLC v. Protenergy Nat. Foods Corp.*, Civ. No. 16-684, 2016 WL 7104840, at *2 (D.N.J. Dec. 5, 2016). In New Jersey, a landlord has a duty to maintain premises under the landlord's control. *See Anderson v. Sammy Redd & Assoc.*, 278 N.J. Super. 50, 54 (N.J. Super. Ct. App. Div. 1994). Like Plaintiff's prior complaint, she has properly alleged that AvalonBay owes Plaintiff a duty of care. However, also like Plaintiff's prior complaint, she has not alleged a breach of that duty. As

alleged, AvalonBay sent a maintenance team to Plaintiff's apartment to remediate the mold. (Fifth Am. Compl. at 15.) The fact that Plaintiff would have preferred someone else to fix the mold in her apartment does not mean that Defendants breached their duty of care, particularly when there are no plausible allegations that the mold continued to persist in Plaintiff's apartment until two years later. Moreover, as previously explained, in the Fourth Amended Complaint, Plaintiff alleged that AvalonBay hired a professional mold remediation company and offered to relocate Plaintiff. These allegations demonstrate that AvalonBay responded to Plaintiff's concerns and took action to mitigate any potential harm to Plaintiff. Accordingly, Plaintiff's negligence claims will be dismissed.

Relatedly, Count Ten alleges gross negligence. Under New Jersey law, the essential elements to state a claim for negligence and gross negligence are identical: (1) the existence of a duty owed by Defendants towards Plaintiff; (2) a breach of that duty by Defendants; (3) that Defendants' breach caused Plaintiff's injuries; and (4) that Plaintiff suffered damages as a result. *Sines v. Darling Ingredients Inc.*, Civ. No. 19-19121, 2020 WL 5015488, at *5 (D.N.J. Aug. 25, 2020). The difference between gross negligence and simple negligence is one of degree and not quality of proof. *See Mills v. Byck*, Civ. No. 19-14349, 2019 WL 3347169, at *6 (D.N.J. July 24, 2019). To that end, "[w]hereas negligence is the failure to exercise ordinary or reasonable care that leads to a natural and probable injury, gross negligence is the failure to exercise slight care or diligence." *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 754 (N.J. 2016) (quotations omitted). Insofar as the Court has already concluded that the Fifth Amended Complaint does not plead a plausible claim for simple negligence, the Court further finds that it does not plausibly plead an elevated claim for gross negligence. This claim will therefore also be dismissed.

4. Fraud (Count IV)

To state a claim for common law fraud in New Jersey, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 316 (D.N.J. 2013). Fraud is subject to the heightened pleading standard of Rule 9(b).

Here, Plaintiff alleges that Defendants made false statements to Plaintiff and to the New Jersey state court judge. (Fifth Am. Compl. at 34.) Plaintiff, however, fails to allege facts with particularly to put Defendants on notice of the precise misconduct with which they are charged, nor does she allege the "who, what, when, where and how of the events at issue." *In re Suprema Specialties*, 438 F.3d at 276–77. At most, Plaintiff alleges that Heredia lied to Plaintiff regarding his experience with mold removal and position at AvalonBay. (Fifth Am. Compl. at 12–14.) Even assuming his statements were false, it is not clear how these misrepresentations are material. First, Heredia allegedly stated that he was a professional and had experience in mold removal. (*Id.*) But Plaintiff only conclusory states that he "has no experience in anything." (*Id.* at 14.) Such a conclusory allegation is insufficient to show that Heredia made a material misrepresentation. Second, Heredia allegedly informed Plaintiff that he was the head of maintenance, when he was allegedly just a maintenance employee. (*Id.*) This distinction is of no consequence and, without more, is not material. Moreover, it is not clear how these alleged misstatements resulted in any damages to Plaintiff, particularly when there are no plausible allegations to suggest that Plaintiff's apartment had mold until two years after Heredia's repairs.

Plaintiff also suggests that an affidavit submitted by Pla in a state court proceeding was false. Even assuming that was true, this affidavit was submitted in a legal proceeding by an attorney, and there are no allegations that Plaintiff reasonably relied on that affidavit to her

13

detriment. Furthermore, this alleged fraud would have been directed towards the state court. Accordingly, Plaintiff's fraud claim will be dismissed.

5. Defamation (Count VI)

Under New Jersey common law, a claim for defamation consists of three elements: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1113 (N.J. 2009) (quoting *DeAngelis v. Hill*, 847 A.2d 1261, 1267–68 (N.J. 2004)); *see also Moriarty v. Classic Auto Grp., Inc.*, Civ. No. 13-5222, 2014 WL 2601887, at *5 (D.N.J. June 11, 2014) (reciting and applying the same elements). To survive dismissal, Plaintiff must therefore allege that Defendants (1) made a false, defamatory statement concerning the plaintiff, and (2) communicated that statement to a third party.

Here, Plaintiff alleges that "Defendants posted on the Front Lobby Door of the Building various legal notices concerning Plaintiff." (Fifth Am. Compl. at 37.) But these allegations fall far short of a claim of defamation. There are no allegations to show that the complaint from the two state-court actions or the warrant for removal entered by the state-court judge are false. Indeed, Plaintiff does not allege which statements contained in those legal filings are allegedly false. Moreover, both documents are legal filings and would be readily accessible to the public, regardless of whether Defendants posted them in the lobby. Accordingly, Plaintiff's defamation claim will be dismissed.

6. Harassment (Count IV)

Despite the Court's prior Opinion noting the lack of clarity regarding the legal basis for Plaintiff's harassment claim, Plaintiff has still failed to identify the legal basis for this claim. Rather, Plaintiff states, without citations to any legal authority, that "New Jersey recognizes

14

Landlord Harassment as action by a landlord that are intended to cause distress or harm to a tenant." (Fifth Am. Compl. at 38.) On the contrary, there does not appear to be a civil cause of action of harassment for damages under N.J.S.A. 2C:33-4. *See Todd v. Citibank*, Civ. No. 16-5204, 2017 WL 1502796, at *5 (D.N.J. April 26, 2017) (noting the New Jersey courts' and State Legislature's reluctance to create a private cause of action for harassment); *see also Malcom v. Bray*, Civ. No. 19-11734, 2019 WL 4918105, at *1 (D.N.J. Oct. 4, 2019) ("From the outset, New Jersey State law does not appear to recognize a civil cause of action for harassment that gives rise to damages.").

To the extent Plaintiff's harassment claim arises from common law, that claim also fails. While there is little caselaw that addresses the common law tort of harassment, it is generally understood that a requisite element is that the alleged tortious conduct be without justification, or that it served no legitimate purpose. *See Olick v. Northampton Cnty.*, Civ. No. 07-10880, 2010 WL 4509828, at *7 (Bankr. E.D. Pa. Nov. 9, 2010) (citing Restatement (Second) of Torts § 870 (1979) (requiring that tortious conduct be "not justifiable under the circumstances")). Here, Plaintiff alleges that Defendants ignored her requests for repairs, withheld a lease renewal, sought to illegally evict Plaintiff, had their attorneys "ongoingly harass and threaten Plaintiff and lie about Plaintiff, and posted false notices about Plaintiff in the lobby." (Fifth Am. Compl. at 38–39.) But as previously explained, Defendants responded to Plaintiff's complaints of mold in a timely manner and offered her reasonable accommodations during the duration of the repairs. (Fifth Am. Compl. at 7–9, 11–15.) These actions by Defendants, as alleged by Plaintiff, are inconsistent with a claim for harassment. Moreover, the allegedly false notices were legal documents, at least one of which was an order entered by a state-court judge. In sum, none of these allegations indicate that Defendants repeatedly engaged in alarming conduct or acted inconveniently to Plaintiff as to

cause annoyance. *See* N.J. Stat. Ann. § 2C:33-4. Accordingly, Plaintiff's harassment claim will be dismissed.

       7.    Intentional and Negligent Infliction of Emotional Distress (Counts VIII and IX)

To establish the tort of intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant's actions were intentional; (2) the defendant's conduct was extreme and outrageous; (3) proximate cause; and (4) severe emotional distress to the plaintiff. *See, e.g., Soliman v. Kushner Companies, Inc.*, 433 N.J. Super. 153, 177 (N.J. Super. Ct. App. Div. 2013*)*; *Okane v. Tropicana Ent., Inc.*, Civ. No. 12-6707, 2013 WL 56088, at *3 (E.D. Pa. Jan. 3, 2013) (citing *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)); *Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 316 (D.N.J. 2016).

Here, Plaintiff has not alleged conduct by Defendants that is so outrageous or extreme to survive dismissal. As alleged, the conduct at issue is Pla's filing of a false affidavit, Pla's alleged theft of Plaintiff's rent, and Defendants' failure to properly repair and fix Plaintiff's apartment. (Fifth Am. Compl. at 39–40.) But these allegations are either conclusory or contradicted by the allegations in Plaintiff's complaint. Moreover, there are also no allegations to suggest that Defendants intended to cause Plaintiff severe emotional distress. Rather, as previously explained, Defendants repeatedly took actions to fix the mold in Plaintiff's apartment and even offered to relocate her to a new apartment. (Fourth Am. Compl. at 29.) These actions by Defendants simply do not establish that Defendants' conduct was so extreme or outrageous to support a claim for intentional infliction of emotional distress. Moreover, Plaintiff merely states that "the emotional distress was severe" and that she "has been traumatized by these actions." (Fifth Am. Compl. at 40.) Again, such conclusory allegations are insufficient to sustain Plaintiff's claim for intentional infliction of emotional distress.

Likewise, Plaintiff also brings a claim for negligent infliction of emotional distress. Under New Jersey law, "[t]o establish a claim of negligent infliction of emotional distress, a plaintiff must show that: (1) defendant owed a duty to plaintiff; (2) defendant breached that duty; (3) plaintiff suffered severe emotional distress; and (4) defendant's breach proximately caused plaintiff's emotional distress." *See Johnson v. City of Hoboken*, 476 N.J. Super. 361, 375–76 (App. Div. 2023). Significantly, "negligent infliction of emotional distress requires a showing of severe emotional distress." *Id.* at 376 (emphasis added).

Plaintiff has again failed to plead any facts that show she suffered from severe emotional distress. Instead, Plaintiff merely alleges that her "emotional distress was and is severe." (Fifth Am. Compl. at 43.) Moreover, the allegations in the Complaint do not establish that Defendants breached a duty of care to Plaintiff. As explained, the allegations in the Fifth Amended Complaint demonstrate that Defendants took reasonable steps in response to Plaintiff's complaints of mold. The fact Plaintiff may have preferred a different mold removal company is insufficient to establish Defendant breached their duty. In short, Plaintiff has also failed to plead facts to support a claim for negligent infliction of emotional distress. Accordingly, both Counts VIII and IX will be dismissed.

        8. <u>Consumer Fraud (Count XI)</u>

"To prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Zaman v. Felton*, 219 N.J. 199, 222 (2014) (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)). An unlawful practice is defined by the CFA as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing,

17

> concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged ....

N.J.S.A. 56:8-2. A consumer fraud claim is subject to Rule 9(b)'s heightened pleading requirements. *See Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) ("It is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).")

Here, Plaintiff alleges that Defendants engaged in false advertising through an ad that claimed living at Avalon Princeton would be "living up" or "living easy." (Fifth Am. Compl. at 46.) But these general marketing phrases are simply non-actionable puffery and cannot form the basis of a CFA claim. *See Arefin v. Doherty Group, Inc.*, Civ. No. A-3913-23, 2025 WL 3211044, at *4 (N.J. Super. Ct. App. Div. Nov. 18, 2025). Nor do Plaintiff's allegations sufficiently allege when she heard these statements or the context in which they were allegedly made. Insofar as Plaintiff fails to allege any context of when these statements were made or when she allegedly heard these statements, Plaintiff has also failed to sufficiently plead a causal relationship between the statements and her alleged loss. Accordingly, Plaintiff's consumer fraud claim (Count XI) will be dismissed.

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' Motion to Dismiss. Plaintiff has been afforded multiple opportunities to amend her complaint, all without success. Because the Court finds that any further amendment would be futile, it will dismiss the complaint with prejudice. *See Harvey v. Technimark, Inc.*, App. No. 24-2893, 2025 WL1409477 (3d Cir. May 15, 2025) (affirming dismissal with prejudice under Rule 12(b)(6) after district court afforded the plaintiff multiple opportunities to amend and found further amendment futile); *Connelly v. Steel Valley School Dist.*, 706 F.3d 209, 217 (3d Cir. 2013). An appropriate Order will follow.

Date: January 23, 2026

                                               s/ Zahid N. Quraishi
                                               **ZAHID N. QURAISHI**
                                               **UNITED STATES DISTRICT JUDGE**